BARNETTE, Judge.
Dr. John George Harz died on March 3, 1959, survived by his widow, Mrs. Mary Celina Sawaya Monsour Plarz; his sister, Mrs. Leonie Harz Rousseau; and various collateral heirs, decendants of predeceased brothers and sisters.
Mrs. Rousseau caused the succession to be judicially opened on March 12, 1959, by presenting for probate an olographic will, dated May 19, 1955. The will was duly probated, and Mrs. Rousseau was appointed dative testamentary executrix.
After much delay, and while the succession proceedings were still open, Mrs. Harz filed a petition on June 1, 1964, to probate another olographic will which bore the date April 19, 1954. Mrs. Harz’s position was that the will of the earlier date was valid, that it complied with the formalities required by law, that it was not revoked by the later will already admitted to probate, and that the two wills could and should be construed together.
Mrs. Rousseau and the collateral heirs filed exceptions of prescription based on LSA-C.C.P. art. 2893. They also filed exceptions of vagueness, improper service, improper use of summary proceedings, and non-joinder of necessary parties, all based on the theory that the petition for probate of the earlier will constituted an attack on the will already probated which attack was barred by LSA-C.C. art. 3542. They further contended that the later will revoked the earlier one. After a trial on the issues on November 25, 1964, the court ordered the earlier will probated, but only insofar as it did not contradict any of the terms of the later will.
*274 Mrs. Rousseau and the collateral heirs have appealed suspensively from the judgment of the lower court which admitted the will to probate, reasserting their plea of prescription. For the reasons given below we find it unnecessary to consider any issue except that raised by the plea of prescription. This issue results from the fact that the Code of Civil Procedure and LSA-R.S. 9:5643 became effective January 1, 1961, after this succession had been judicially opened and while proceedings herein were pending.
A consideration of the jurisprudence of this State leaves no doubt that a statute which sets out a prescriptive period is remedial legislation and is to he applied retrospectively unless specifically provided otherwise. General Motors Acceptance Corp. v. Anzelmo, 222 La. 1019, 64 So.2d 417 (1953); Oil Well Supply Co. v. Red Iron Drilling Co., 210 La. 222, 26 So.2d 726 (1946); State v. Alden Mills, 202 La. 416, 12 So.2d 204 (1943); Shreveport Long Leaf Lumber Co. v. Wilson, 195 La. 814, 197 So. 566 (1940); Cassard v. Tracy, 52 La.Ann. 835, 27 So. 368, 49 L.R.A. 272 (1899); De Armas v. De Armas, 3 La.Ann. 526 (1848); State v. Bermudez, 12 La. 352 (1838); Dean v. Carnahan, 7 Mart., N.S., 258 (La.1828).
State v. Alden Mills, supra, involved the effect of a constitutional amendment which set a three year prescription on certain taxes. The amendment became effective on December 10, 1938, and on December 8, 1941, the State filed its action for taxes alleged to be owed by the defendant for the years 1933 through 1938 inclusive. The State argued that any prescription of its right to collect back taxes could not, constitutionally, begin to run until the effective date of the amendment. The Supreme Court ruled to the contrary;
“When we consider that this constitutional amendment, adopted in pursuance of Act 35 of 1938, could not possibly impair the obligation of a contract, or affect any vested right except rights of the State herself, there is no reason why we should not apply the general rule of construction announced in De Armas v. De Armas, 3 La.Ann. 526, in 1848, — and affirmed only two years ago in Shreveport Long Leaf Lumber Co. v. Wilson, 195 La. 814, 197 So. 566—thus:
“ ‘Laws of prescription, and those limiting the time within which actions may be brought, are retrospective in their operation.’ ” 202 La. at 426, 12 So.2d at 207.
In Shreveport Long Leaf Lumber Co. v. Wilson, supra, plaintiff had inscribed a ma-terialman’s lien on defendant’s property and was attempting to bring an action to foreclose the lien. After the lien was inscribed, an Act of the Legislature was passed altering the method of interrupting prescription on the enforcement of the lien. The Supreme Court, in upholding application of the modified statute on the ground that it was remedial, said:
“ * * * Such statutes operate retrospectively and do not fall within the general rule that statutes must be construed as prospective in their operation unless the language used plainly shows a contrary intent. * * * ” 195 La. at 826, 197 So. at 570.
Having concluded that laws of prescription are remedial and may be applied retrospectively, we now address ourselves to the argument that an exception has been provided by the Code of Civil Procedure Enabling Act, which takes LSA-C.C.P. art. 2893 out of this general rule.
Prior to the enactment of the Louisiana Code of Civil Procedure and the contemporaneous enactment of Act 31 of 1960, amending Title 9 of the Louisiana Revised Statutes of 1950, both of which became effective January 1, 1961, there was no prescriptive period or time limitation in which a testament could be offered for probate. *275 Article 2893 of the Code of Civil Procedure provides as follows:
“No testament shall be admitted to probate unless a petition therefor has been filed in a court of competent jurisdiction within five years of the judicial opening of the succession of the deceased.”
Act 31 of 1960, amending Title 9 of the Revised Statutes of 1950, added a new section (now LSA-R.S. 9:5643 [being § 6 of Act 31 of I960]) providing as follows:
“A proceeding to probate the purported testament of a deceased person is prescribed by five years, reckoning from the date of the judicial opening of the succession of the deceased.”
An explanatory note following the foregoing LSA-R.S. 9:5643 is as follows:
“Adopted on the recommendation of the Louisiana State Law Institute to preclude any attack on the constitutionality of Art. 2893, LSA-Code of Civil Procedure, on the ground that it is substantive rather than procedural.”
Thus it was recognized by the Louisiana Law Institute, which prepared the Projet of the Louisiana Code of Civil Procedure, that the foregoing Article 2893 might be subject to a question of constitutionality and it took the precaution of having its substance enacted simultaneously in LSA-R.S. 9:5643. We assume the basis of its doubt or fear of constitutional attack stems from the question of whether Article 2893 is substantive rather than procedural law and therefore beyond the scope of the title and object of the Act (15 of 1960) by which the Code of Civil Procedure was enacted.
We think this question would better have been resolved by drafting Article 2893 to read as follows: “No testament shall be admitted to probate unless a petition therefor has been filed in a court of competent jurisdiction as provided by law.” This then would relate directly to LSA-R.S. 9:5643 and would be consistent with the numerous other procedural articles of the Code which relate to other laws providing the prescriptive limitation for numerous other actions. It is doubtful that the prescriptive limitation for instituting the proceeding for probate of a will should have been included in the Code of Civil Procedure. More properly, it should be in the Civil Code or statutes ancillary thereto dealing with the law of persons and property. This evidently was recognized by the Law Institute which had this prescriptive law included in LSA-R.S. Title 9, which is the title number given to Civil Code Ancillaries in the Revised Statutes.
This brings us to a consideration of the meaning of § 4 of Act 15 of 1960 (see LSA-C.C.P., Vol. 1, p. 748), the pertinent portion of which reads as follows:
“(A) This act is hereby declared to be remedial legislation.
“(B) The provisions of the Louisiana Code of Civil Procedure enacted by Section 1 hereof, so far as applicable, shall' govern and regulate the procedure in all civil actions and proceedings:
(1) Instituted on or after the effective date of this act; and
(2) Pending on the effective date of this act, except that none of the provisions thereof shall:
(a) Decrease or shorten any procedural delay granted or allowed by any law in existence immediately prior to, and which had commenced to run but had not yet completely elapsed on, the effective date of this act; * * (Emphasis added.)
Mrs. Harz, petitioner for probate of the will of April 19, 1954, on a petition filed more than five years after the succession was judicially opened, and Mr. John T. Charbonnet, the attorney named in that will, contend that, since there was no prescription of the right to petition for probate of a testament prior to the effective date of the Code of Civil Procedure (Janu *276 ary 1, 1961), that Ardele 2893 decreases or shortens the “procedural delay” granted or allowed them and which had begun to run when Article 2893 became effective. Therefore, they contend that their petition for probate comes within the exception provided in § 4. We do not agree with this contention and are of the opinion that the exception in § 4(B) (2) (a) is not applicable to a petition for probate of a testament notwithstanding Article 2893.
In the first place, prescription is not a “procedural delay.” We discuss this more fully below. Secondly, assuming arguendo, the contrary, the exceptions provided in § 4 are limited to the provisions of the Code of Civil Procedure only and do not relate to the provisions of the Revised Statutes. Note the language of § 4: “(B) The provisions of the Louisiana Code of Civil Procedure * * * shall govern and regulate the procedure * * * except that none of the provisions thereof shall: (a) Decrease or shorten any procedural delay * * *” (emphasis added). The word “thereof” definitely refers to the provisions of the Code of Civil Procedure and does not include provisions in the Revised Statutes. Therefore, if Article 2893 is embraced in this exception, LSA-R.S. 9:5643 is not, and effect must be given to the latter.
Returning to our first premise, we think the clear intention of § 4(B) (2) (a) in reference to “procedural delay” was to embrace within this exception the delays incident to the mechanics of judicial procedure after the proceeding has been initiated. To illustrate, the time for answering a petition, the time for confirming a preliminary default, the time for taking an appeal, the time for answering an appeal, and the time for moving to dismiss an appeal are examples of procedural delays. In the case of devolutive appeal, and the time for answering and moving to dismiss an appeal, the “delay” was decreased or shortened. Unquestionably these delays are procedural and are illustrative of those intended to be embraced in § 4(B) (2) (a). Coleman v. Liberty Mut. Ins. Co., 133 So.2d 179 (La.App. 4th Cir. 1961); Radecker v. Walko Builders, Inc., 130 So.2d 684 (La.App. 4th Cir. 1961).
The rights to sue for damages arising ex delicto, to sue on open account, to redeem property sold at tax sale, to demand reduction of excessive donation, to nullify a contract or testament, and numerous other rights of action are prescribed by various provisions of the law. So also is the right to petition for probate of a will. The prescriptive period fixed by law is a bar to the exercise of a right through judicial proceedings. It has nothing to do with the mechanics of the judicial proceeding once it is begun. Only such “procedural delays” as are incidental to the mechanics of the judicial process are affected by § 4 (B) (2) (a) of the Code of Civil Procedure Enabling Act.
For the foregoing reasons the judgment of the district court of November 25, 1964, overruling exceptions and ordering the will of the deceased Dr. John George Harz of date April 19, 1954, probated, is reversed. The exception of prescription is sustained and the petition for probate of said will is dismissed.
Further ordered, that the case be remanded for further proceedings consistent herewith.
All costs of this appeal are to be paid by the appellee, Mrs. Mary Celina Sawaya Monsour Harz.
Reversed and remanded.